FILED
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.
★ APR 0 5 2019 ★
BROOKLYN OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------x
IN RE HARRIKISSOON HARRIPERSAD.
------------------------------------------------------------x
BORCHERT & LASPINA, P.C.,

    Appellant,

v.

HARRIKISSOON HARRIPERSAD,

    Appellee-Debtor,

------------------------------------------------------------x

OPINION & ORDER

18 Civ. 2092

**GERSHON, United States District Judge:**

This appeal arises from a bankruptcy court's imposition of civil contempt sanctions against appellant, the law firm of Borchert & LaSpina, P.C. ("Borchert & LaSpina"), for failing to comply with two prior orders of the bankruptcy court. For the reasons discussed below, the decision of the bankruptcy court is affirmed.

**I.   Background**

   **A.  The Foreclosure**

Appellee-Debtor Harrikissoon Harripersad ("Mr. Harripersad") owned a parcel of real property at 871 Liberty Avenue, Brooklyn, New York ("Premises"), which was encumbered by a first mortgage lien held by Emigrant Funding Corporation ("Emigrant"). On June 29, 2015, a judgment of foreclosure and sale on the Premises was entered in Kings County Supreme Court. Over the course of the following year, Mr. Harripersad filed two *pro se* skeletal Chapter 13 filings. Thereafter, on June 29, 2016, Mr. Harripersad filed a Chapter 11 bankruptcy petition through his attorney, Anthony Gallo of AJ Gallo Associates, P.C. ("Mr. Gallo").

1

The next day, June 30, 2016, a foreclosure sale was conducted by Emigrant with respect to the Premises and a third party successfully bid on the property at the auction. Robert S. Gershon[1] ("Referee") was the referee appointed to conduct the sale, and he collected a ten percent deposit from the successful bidder.

### B. The First Motion and First Order

On July 7, 2016, appellant Borchert & LaSpina, as counsel to Emigrant, filed a motion with the bankruptcy court ("First Motion") seeking, *inter alia*, an order confirming the absence of an automatic stay regarding the foreclosure sale. Following oral argument, by order dated September 18, 2016 ("First Order"), Bankruptcy Judge Nancy Hershey Lord granted the requested relief and ruled that an automatic stay did not apply to Emigrant. The First Order provided:

> [F]ollowing the closing of the sale of the Premises pursuant to the foreclosure auction held on June 30, 2016 in the Supreme Court of New York, Kings County, under index number 1949/2014, the report of Referee Robert S. Gershon, Esq. shall be electronically filed with the bankruptcy court showing how the sale proceeds were disbursed . . . and should any surplus monies exist after payment of all liens against the Premises at the closing, the surplus monies shall be turned over to Mr. Harripersad's attorney Anthony J. Gallo, Esq. of AJ Gallo & Associates, P.C., 6060 Jericho Turnpike, Suite 216, Commack, NY 11725, to be held in escrow by Mr. Gallo pending further proceedings before this Court.

The surplus funds were the property of the bankruptcy estate and were intended to be used by Mr. Harripersad to fund his Chapter 11 plan.

At a closing held on February 6, 2017, the Referee executed a deed to the Premises to the buyer and tendered a check to Emigrant totaling $460,970.13 but did not turn over the surplus funds to Mr. Gallo, as instructed by the First Order. Instead, the Referee deposited the surplus of $273,751.99 after expenses with the Kings County Clerk on February 8, 2017.

---

[1] No relation to the undersigned.

### C. Emails Between Mr. Gallo and Mr. Sackoor

By email dated March 17, 2017, Mr. Gallo sent an email to counsel of record at Borchert & LaSpina, Jason Sackoor ("Mr. Sackoor"), following up on the closing and reminding him of the requirements of the First Order to deposit the proceeds with Mr. Gallo and to file an accounting of the sale. Mr. Sackoor responded on March 29, 2017, stating in relevant part:

> The referee is constrained by the Judgment of foreclosure and sale to pay the surplus proceeds into the Kings County Clerk's office. I am advised that he has done so. As for the report of sale, that has also been filed with the Kings County Clerk, but we will have the report of sale filed in the bankruptcy court forthwith.

Mr. Gallo responded the same day, seeking to learn what authority constrained the Referee to pay the surplus funds to the Kings County Clerk and reminding Mr. Sackoor that the First Order controlled. Mr. Sackoor replied:

> Just so you know, I had no problem with paying the surplus over to you. The referee is the one who brought it up and correctly stated that he was constrained by the judgment to pay the surplus to the clerk.

The final email in that conversation is from Mr. Gallo to Mr. Sackoor disagreeing with the position of the Referee and arguing that "…pursuant to 11 USC 362, et seq., the surplus funds should have been turned over as directed by Judge Lord's order."

### D. The Second Motion and Second Order

On May 18, 2017, Mr. Harripersad filed a motion pursuant to 11 U.S.C. § 105(a) to compel compliance with the First Order ("Second Motion"). Mr. Harripersad argued that Borchert & LaSpina moved the court for relief, and then accepted only the portion of the First Order that suited it, while ignoring the portions that required the proceeds to be given to Mr. Gallo and to file the report of sale. Borchert & LaSpina did not oppose the Second Motion but eventually filed the Referee's report of sale on May 23, 2017, three and a half months after it was prepared by the

3

Referee and two months after telling Mr. Gallo by email that it would be filed "forthwith." Borchert & LaSpina also failed to appear at the hearing on the Second Motion on June 15, 2017.

After not receiving any briefing or argument from Borchert & LaSpina, Chief Bankruptcy Judge Carla E. Craig issued an order on September 17, 2017 ("Second Order") stating:

> [T]hat Borchert & LaSpina, P.C., attorneys for Emigrant Funding Corporation, and Robert S. Gershon, Referee, are hereby directed to turn over to Anthony J. Gallo, Esq., as attorney for Debtor, 6080 Jericho Turnpike, Suite 216, Commack, New York 11725, the Surplus Funds realized from the sale of the Premises; . . . and . . . in the event said Surplus Funds are not in their possession, Borchert & LaSpina and the Referee shall take any steps necessary to procure the release of said Surplus Funds . . . .

At a status conference held on October 26, 2017, Mr. Sackoor of Borchert & LaSpina sought to "vacate" the Second Order and, for the first time, argued that it did not have standing to obtain the surplus funds. It does not appear from the record that Borchert & LaSpina filed any motions in connection with this oral request for relief. In connection with this argument, Mr. Sackoor admitted on the record, "I'm not even sure that the order directing that the surplus, the original one, directing that the surplus be turned over to Mr. Gallo, was served on the referee. That would be the person who would've needed service of that order." The bankruptcy court considered Borchert & LaSpina's impossibility argument but rejected it on the basis that the Second Order did not require Borchert & LaSpina to have possession of the funds, but rather "take whatever steps are necessary to procure the release."

### E. The Third Motion and Third and Fourth Orders

When, by December 13, 2017, the surplus funds had still not been provided to Mr. Gallo, Mr. Harripersad filed another motion ("Third Motion"), this time by proposed order to show cause why the court should not find the Referee and Borchert & LaSpina in civil contempt for their collective failure to comply with the First and Second Orders and seeking the reimbursement of

4

costs and expenses to Mr. Harripersad and his counsel, Mr. Gallo. The Third Motion was made pursuant to 11 U.S.C. § 105 and Rule 9020 of the Federal Rules of Bankruptcy Procedure.

Borchert & LaSpina opposed the Third Motion by arguing that it was never in a position to turn over the surplus proceeds to Mr. Gallo because it is not an entity with a right of redemption in the property, so it did not have standing to apply for the surplus funds. Nonetheless, Borchert & LaSpina argued that it had complied with the Second Order by sending an email to the Referee on September 18, 2017 "asking about the surplus funds."

On December 19, 2017, all parties appeared at a show cause hearing. The bankruptcy court heard Borchert & LaSpina's argument of impossibility based on the fact that it was never personally in possession of the funds. Judge Lord determined that it was "[n]ot an acceptable response" because Borchert & LaSpina had sought the very order it was claimed to be in contempt of and should have taken steps to ensure that the Referee paid Mr. Gallo, instead of just making sure its client was paid.

At the December hearing—and contrary to its statement on the record at the October 26, 2017 conference that it did not know if the Referee had been served with the First Order—Mr. Sackoor stated for the first time that he told the Referee *at the time of the closing* that pursuant to the First Order, Mr. Gallo should receive the surplus. The Referee, however, countered that he was unaware of the First Order until September 2017, implying that Borchert & LaSpina's version of the events was incorrect. The bankruptcy court did not make a finding about which party's version it was crediting and did not make an explicit finding of bad faith. Nevertheless, the bankruptcy court stated on the record that it was granting the motion and would enter an order requiring Borchert & LaSpina "to pay for the making of" the Second Motion and the Third Motion, because Borchert & LaSpina "violated the order compel[ing] compliance and still have not gotten

5

the funds." The bankruptcy court also cautioned the Referee that, if he did not help Mr. Gallo obtain the funds, then he would "be in contempt of this Court."[2]

On March 21, 2018, Judge Lord issued a final order ("Fourth Order") directing Borchert & LaSpina to pay all costs and attorney's fees incurred by Mr. Harripersad in connection with the prosecution of the prior motions; she awarded $7,921.25 in legal fees and $71.25 in expenses based on a March 6, 2018 application of Mr. Gallo.[3] It is this Fourth Order which Borchert & LaSpina appeals.

**II.  Issues on Appeal**

On appeal, Borchert & LaSpina argues that it complied with the provision of the First Order requiring it to file the Referee's report of sale and that it was impossible for it to comply with the provision of the First Order requiring the Referee to provide the surplus funds to Mr. Gallo. It further argues that the bankruptcy court erred by issuing the Second Order directing Borchert & LaSpina to turn over the surplus funds to Mr. Gallo because it never had access to the surplus funds. Relatedly, it argues that the bankruptcy court erred in the Fourth Order by sanctioning it because it was impossible for Borchert & LaSpina to comply with the Second Order since it never had control over the surplus funds. Finally, Borchert & LaSpina contends that the bankruptcy court erred in sanctioning it because it did not act in bad faith. Borchert & LaSpina does not challenge the amount sought by Mr. Gallo.

---

[2] According to Borchert & LaSpina, Mr. Gallo applied to the Kings County Clerk for the surplus funds on January 17, 2018. On March 2, 2018, the Bankruptcy Judge issued an order to the New York City Department of Finance and/or the Commissioner of Finance ("Third Order") to immediately turn over the surplus funds to Mr. Gallo.

[3] As to the Referee, the Fourth Order ordered him to accompany Mr. Gallo to the New York State Department of Finance and/or the New York State Comptroller to procure the release of the surplus funds for Mr. Gallo to hold in escrow or else the Referee would also be held in civil contempt.

## III. Appellate Jurisdiction

Before considering the issues on appeal, a court must first confirm that it has jurisdiction to do so. *See In re Chateaugay Corp.*, 838 F. 2d 59, 61 (2d Cir. 1988). The parties agree that the Fourth Order is immediately appealable, though they reach that conclusion in different ways.

Although the bankruptcy court did not expressly state that it imposed sanctions because it was holding Borchert & LaSpina in civil contempt, the Fourth Order granted a motion seeking to hold the firm in civil contempt. Moreover, all parties treat the Fourth Order as a finding of civil contempt, although, solely for the purpose of establishing immediate appealability, Borchert & LaSpina argues that the civil contempt order was, in reality, a criminal contempt order.

Civil contempt "is a sanction to enforce compliance with an order of the court or to compensate for losses or damages sustained by reason of noncompliance." *McComb v. Jacksonville Paper Co.*, 336 U.S. 187, 191 (1949). Moreover, there is a "presumption in favor of finding civil as opposed to criminal contempt where there is some doubt as to the nature of the contempt." *United States v. Wendy*, 575 F.2d 1025, 1029 n.13 (2d Cir. 1978). These factors weigh in favor of a finding of civil contempt in this matter. The Fourth Order did not exact an arbitrary punitive fine to punish past conduct; it awarded compensatory attorney's fees to a party who successfully prosecuted two motions to compel and a contempt motion. *See Amaker v. Goord*, 2013 WL 6837460, at *2 (W.D.N.Y. Dec. 23, 2013). Because the bankruptcy court imposed sanctions to compensate Mr. Gallo for damages caused by prior non-compliance, I find that Borchert & LaSpina was held in civil, rather than criminal, contempt. Even as a civil contempt sanction, for the reasons that follow, this matter is nonetheless immediately appealable.

An order is "final" for appeal purposes when a decision has been entered that "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 467 (1978). However, the concept of "finality" is more

7

flexible in the bankruptcy context than in ordinary civil litigation. *See In re Prudential Lines, Inc.*, 59 F.3d 327, 331 (2d Cir. 1995). This flexibility arises from the fact that "bankruptcy proceedings often continue for long periods of time, and discrete claims are often resolved at various times over the course of the proceedings." *In re Chateaugay Corp.*, 880 F.2d 1509, 1511 (2d Cir. 1989). As a result, the Second Circuit "allow[s] for immediate appeal in bankruptcy cases of orders that finally dispose of discrete disputes within the larger case." *In re Prudential Lines, Inc.*, 59 F.3d at 331. A "dispute is not completely resolved until the bankruptcy court determines the amount of damages to be awarded." *In re Integrated Resources, Inc.*, 3 F.3d 49, 53 (2d Cir. 1993).

Borchert & LaSpina is a civil contemnor alleging an inability to comply with a discrete contempt order in a bankruptcy matter. The order of the bankruptcy court not only resolved the issue of contempt but awarded damages and finally disposed of all matters involving Borchert & LaSpina in the underlying case. The Fourth Order is therefore a sufficiently final order to permit an appeal under 28 U.S.C. § 158(a)(1).

## IV. Standard on Appeal

A bankruptcy court's "decision to impose sanctions in light of properly found facts may not be overturned except for abuse of discretion." *Huber v. Marine Midland Bank*, 51 F.3d 5, 10 (2d Cir. 1995). "A bankruptcy court abuses its discretion if it bases its decision on an erroneous view of the law or clearly erroneous factual findings." *In re Blaise*, 219 B.R. 946, 950 (B.A.P. 2d Cir. 1998). The district court therefore reviews the factual findings for clear error and its legal conclusions *de novo*. *See In re Bonnanzio*, 91 F.3d 296, 300 (2d Cir. 1996). Under the clearly erroneous standard, a lower court's choice between two permissible views of the facts cannot be held to be clearly erroneous. *Anderson v. City of Bessemer, N.C.*, 470 U.S. 564, 573 (1985).

## V. Whether Borchert & LaSpina Failed to Comply with the First Order, and If So, Whether the Non-Compliance Was Excusable Due to Impossibility

Addressing the issues raised by Borchert & LaSpina chronologically, the first question is whether Borchert & LaSpina failed to comply with the First Order, and if so, whether the non-compliance was excusable because it was impossible for Borchert & LaSpina to comply. Bound up in this issue is the related question of whether it was appropriate for the bankruptcy court to sanction Borchert & LaSpina as a result of non-compliance.

A party may be held in civil contempt for failing to comply with a prior order of the court if the prior order is "clear and unambiguous," the proof of non-compliance is "clear and convincing," and the violating party has not been "reasonably diligent and energetic in attempting to accomplish what was ordered." *E.E.O.C. v. Local 638 . . . Local 28 of Sheet Metal Workers' Int'l Ass'n*, 753 F.2d 1172, 1178 (2d Cir. 1985) (citation omitted), *aff'd on other grounds sub nom. Local 28 of Sheet Metal Workers' Int'l Ass'n v. E.E.O.C.*, 478 U.S. 421 (1986). Courts determining "reasonable diligence" look to "'whether the defendant in the face of the requirements of a court order has neglected to marshal its own resources, to assert its own authority, and to demand needed results from subordinate individuals and agencies' and 'whether the defendant has displayed an evident sense of non-urgency bordering on indifference . . . .'" *Safeco Ins. Co. of Am. v. M.E.S., Inc.*, 2014 WL 12834210, at *3 (E.D.N.Y. June 27, 2014) (citation omitted), *report and recommendation adopted after hearing* No. 09 Civ. 3312, Minute Order dated July 23, 2014 (Docket Entry No. 321).

Additionally, where a party asserts impossibility as a defense to a civil contempt sanction, "the court need only (1) have entered a clear and unambiguous order, (2) find it established by clear and convincing evidence that that order was not complied with, and (3) find that the alleged contemnor has not clearly established his inability to comply with the terms of the order." *Huber*,

9

51 F.3d at 10. "[T]he burden of proving *plainly and unmistakably* that compliance is *impossible* rests with the contemnor." *Id.* at 10 (emphasis in original) (quoting *In re Marc Rich & Co.*, 736 F.2d 864, 866 (2d Cir. 1984)).

As an initial matter, Borchert & LaSpina does not argue that the First Order was unclear or ambiguous. With regard to the provision of the First Order requiring that Borchert & LaSpina file the Referee's report of sale, Borchert & LaSpina appears to tacitly argue that proof of its non-compliance was not clearly established because it filed the report of sale prior to the return date of Mr. Harripersad's Second Motion. By making such an argument, Borchert & LaSpina must concede that it filed the report of sale only *after* Mr. Harripersad filed the Second Motion, to compel compliance with the First Order. Further, Borchert & LaSpina makes no attempt to show that its non-compliance was caused by anything other than a lack of reasonable diligence. Finally, Borchert & LaSpina does not, and indeed *cannot*, argue impossibility as a defense to this provision, as it eventually filed the report of sale with the bankruptcy court. It was therefore not clearly erroneous for the bankruptcy court to find that Borchert & LaSpina failed to comply with the provision of the First Order requiring it to file the report of sale.

The First Order also directed that "should any surplus funds exist after payment of all liens against the Premises at the closing, the surplus monies shall be turned over to Debtor's attorney . . . ." In its reply, Borchert & LaSpina primarily argues that it was impossible to comply with this provision because it could not have anticipated that the Referee would refuse to turn over the surplus money to Mr. Gallo and instead deposit the surplus money in the Kings County Clerk's office. This argument is disingenuous. Borchert & LaSpina's First Motion triggered the First Order. At the time of the foreclosure sale, Emigrant controlled Debtor's property—part of which belonged to the Debtor's bankruptcy estate, not to Emigrant. Borchert & LaSpina, as counsel to

Emigrant, was obliged to ensure that the property was properly distributed by informing the Referee of a superseding federal court order. Instead, Borchert & LaSpina simply foreclosed the Premises and reaped the benefits of the foreclosure sale.

Moreover, though Borchert & LaSpina was aware of the provisions of the First Order specifying the specific distribution of surplus funds, Borchert & LaSpina gave conflicting reports to the bankruptcy court about when it provided the First Order to the Referee. Although it seems clear that the bankruptcy court accepted the Referee's showing that he did not receive the First Order until September 2017, there is no express finding to that effect by the bankruptcy court. I will therefore assume for the purposes of this motion that Borchert & LaSpina did provide the First Order to the Referee earlier than that. Even crediting Borchert & LaSpina with that fact, it is insufficient. As detailed above, emails provided to the bankruptcy court show that on March 29, 2017, Mr. Sackoor of Borchert & LaSpina wrote Mr. Gallo to say that the Referee was "correct" in depositing the money with the New York City Department of Finance based on the judgment of foreclosure. If Borchert & LaSpina believed that the First Order conflicted with an order of the state court, it was incumbent on Borchert & LaSpina to immediately alert the bankruptcy court.

Based on these circumstances, it was not clearly erroneous for the bankruptcy court to find that Borchert & LaSpina failed to carry its burden of proving either that it was reasonably diligent and energetic in attempting to accomplish what was ordered or that it was impossible for it to comply with the First Order. Having found that Borchert & LaSpina failed to comply with the First Order, the bankruptcy court did not abuse its discretion in sanctioning Borchert & LaSpina as a result.

## VI. Whether the Bankruptcy Court Erred in Issuing the Second Order; Whether It Was Impossible for Borchert & LaSpina to Comply with the Second Order and Whether the Bankruptcy Court Erred in Sanctioning Borchert & LaSpina as a Result of Non-Compliance

As with the First Order, Borchert & LaSpina does not argue that the Second Order was unclear or ambiguous. Instead, it argues that the bankruptcy court should never have issued the Second Order and that, once issued, a sanction on the basis of non-compliance was inappropriate because Borchert & LaSpina did not have standing to turn over the surplus funds.

Both arguments are rooted in the defense of impossibility and rest on the assumption that the bankruptcy court ordered Borchert & LaSpina itself to provide the money to Mr. Gallo. The fallacy of this argument is that the plain language of the Second Order did not require Borchert & LaSpina to provide funds to Mr. Gallo or to obtain them from the Department of Finance. The Second Order provided that "in the event said Surplus Funds are not in their possession, Borchert & LaSpina and the Referee shall take any steps necessary to procure the release of said Surplus Funds."

Chief Judge Craig understood full well that Borchert & LaSpina may not have the funds or be able to personally turn them over to Mr. Gallo. She therefore ordered them to *assist* with the retrieval of the surplus funds. Additionally, as mentioned above, Borchert & LaSpina neither opposed the Second Motion, nor appeared for the conference related to the Second Motion. As a result, Borchert & LaSpina did not meet its burden of showing plainly and unmistakably to the bankruptcy court that compliance with the First Order was impossible. I therefore find that the bankruptcy court did not err in directing Borchert & LaSpina to aid Mr. Gallo in the retrieval of the surplus funds in the Second Order.

I next turn to the argument that it was impossible for Borchert & LaSpina to comply with the Second Order. Though Borchert & LaSpina claims that it was impossible to comply because

12

the funds were already deposited with the Kings County Clerk, the only action Borchert & LaSpina alleged it took in response to the Second Order was sending a single email to the Referee on September 18, 2017 "asking about the funds." This act alone cannot be described as "reasonably diligent and energetic," *E.E.O.C.*, 753 F.2d at 1178. Indeed, Borchert & LaSpina's "evident sense of non-urgency border[ed] on indifference . . . ." *Safeco Ins. Co. of Am.*, 2014 WL 12834210, at *3.

Based on these facts, the bankruptcy court's determinations that Borchert & LaSpina did not make a showing that it was impossible for it to comply with the provisions of the Second Order and that Borchert & LaSpina was not reasonably diligent in attempting to comply with the orders of the court were supported by clear and convincing evidence. Nor did the bankruptcy court abuse its discretion in choosing to sanction Borchert & LaSpina.

### VII. Whether a Finding of Bad Faith Is Necessary to Impose Civil Contempt Sanctions

Borchert & LaSpina's final argument is that the bankruptcy court erred in issuing sanctions absent a finding of bad faith. Mr. Harripersad agrees with Borchert & LaSpina that the proper standard for the imposition of sanctions is a finding of bad faith but argues that Borchert & LaSpina's behavior reached that threshold because its disregard of two orders of the bankruptcy court interfered with the prosecution of a Chapter 11 re-organization. I note that the bankruptcy court did not make an express finding of bad faith in the Fourth Order or on the record at the December hearing. Nevertheless, because civil contempt serves a remedial purpose, "it matters not with what intent the defendant did the prohibited act," *McComb*, 336 U.S. at 191, and a court may hold a party in civil contempt "even if the violation was not willful." *Cardell Fin. Corp. v. Suchodolski Assocs., Inc.*, 2012 WL 12932049, at *41 (S.D.N.Y. July 17, 2012), *report and recommendation adopted* 896 F. Supp. 2d 320 (S.D.N.Y. 2012).

Borchert & LaSpina's reliance on *Enmon v. Prospect Capital Corp.*, 675 F.3d 138 (2d Cir. 2012), which required a finding of bad faith, is misplaced. The sanctions in *Enmon* issued "pursuant to both [the lower court's] inherent powers and 28 U.S.C. § 1927." *Enmon*, 675 F.3d at 143. While a district court must make a finding of bad faith to impose sanctions pursuant to its inherent power or § 1927, *id.* at 143, here, the sanctions resulted from a finding of civil contempt, and the intent of Borchert & LaSpina is irrelevant. In sum, the bankruptcy court did not abuse its discretion in choosing to sanction Borchert & LaSpina without a finding of bad faith.

## VIII. Conclusion

In conclusion, the bankruptcy court did not err in issuing the First, Second, or Fourth Orders. Moreover, the bankruptcy court did not err in finding that Borchert & LaSpina failed to comply with the First and Second Orders and in finding that Borchert & LaSpina failed to carry its burden of proving either that it was reasonably diligent and energetic in attempting to accomplish what was ordered or that it was impossible for it to comply with the First or Second Orders. Finally, having found that Borchert & LaSpina failed to comply with the First and Second Orders, the bankruptcy court did not abuse its discretion in choosing to sanction Borchert & LaSpina absent a finding of bad faith. The civil contempt order and award of fees is affirmed.

SO ORDERED.

/s/ *Nina Gershon*
NINA GERSHON
United States District Judge

Dated: April 5, 2019
Brooklyn, New York